UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| BRANDON THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-008 |
| | ) | |
| COASTAL STATE PRISON, | ) | |
| and WARDEN PANEIRO, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

*Pro se* plaintiff Brandon Thomas has filed this 42 U.S.C. § 1983 case alleging problems with medical care at Coastal State Prison. *See* doc. 1-1 at 3-4. It was transferred to this Court from the Northern District of Georgia. *See* doc. 2. The Court granted Thomas leave to proceed *in forma pauperis*, doc. 12, and he returned the required forms, docs. 13 & 14. The Court must, therefore, screen his Complaint pursuant to 28 U.S.C. § 1915A. Although his Complaint fails to state a claim upon which relief may be granted, *see* 28 U.S.C. § 1915A(b)(1), he will have an opportunity to amend it.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't*

*of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Thomas is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Thomas' allegations are somewhat vague. He alleges that on five days in October and November 2022, the distribution of prescription medications, "pill call," was not properly conducted. *See* doc. 1-1 at 3-4. He suggests, although he does not expressly allege, that the problem caused him to miss doses of prescribed medications. *Id.* Somewhat related, he alleges that in November 2022, he was no longer provided with some unspecified prescription and told, by an unidentified individual, that he "would not die without it." *Id.* at 4. He also suggests that the issue led to unidentified "mental health prisoners" missing medication "to regulate their behavior," creating a generalized risk. *Id.* at 3. He also alleges that he has "ADA issues," including dehydration.

2

*Id.* Despite that issue his dorm does not have a working water fountain. *Id.* Finally, he alleges that his wheelchair is in disrepair, and he "is still waiting on a new wheelchair." *Id.* at 3-4. He seeks "$10.5 million and an ADA investigation." *Id.* at 4.

## I. Deliberate Indifference

The most plausible construction of Thomas' allegations is that he asserts that his Eighth Amendment rights were violated when unidentified defendants failed to provide adequate medical care. To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate

3

indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal quotations and citation omitted).

First, Thomas has not identified a proper defendant for a § 1983 claim. Coastal State Prison is not subject to suit under § 1983. Prisons themselves, as opposed to their employees, are not entities subject to suit. *See, e.g., Johnson v. Benton*, 2021 WL 6750967, at *2 (S.D. Ga. Dec. 20, 2021) ("Coastal State Prison is not a proper party because jails and prisons are not legal entities subject to liability in § 1983 claims," and collecting cases). He also names "Warden Paneiro," as a defendant, *see* doc. 1-1 at 3, but does not include any allegations concerning Paneiro's conduct, *see id.* at 3-4. The lack of any direct allegations suggests that Thomas may seek to hold Paneiro liable solely in his supervisory capacity. Section 1983 does not support such claims. *See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)) ("Section 1983 claims may not

be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*.").

Second, Thomas has not alleged sufficient facts to support a deliberate indifference claim against any defendant. While failure to provide prescription medication can, in some circumstances, constitute deliberate indifference, *cf. Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985), negligent administration of medication does not, *see, e.g., Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106)). The isolated incidents of failure to provide medications do not clearly allege deliberate indifference, as opposed to mere negligence. Moreover, Thomas has not alleged any individual who might have been subjectively indifferent. *See* doc. 1-1 at 3-4. As discussed below, although he has not sufficiently alleged a claim, he will have an opportunity to amend.

Thomas' allegations concerning his wheelchair also implicate, but do not sufficiently allege, a deliberate indifference claim. Those allegations are simply too vague, but there are several obvious gaps in his allegations. First, Thomas has not alleged why he uses a wheelchair. The Court cannot assume that his use of a wheelchair implies a serious

5

medical need. Moreover, he identifies an employee who he informed about mechanical problems with the wheelchair, but does not identify that employee as a defendant. Finally, his allegations do not clearly allege that any defendant was indifferent to the issues with his wheelchair. His allegation that he is "waiting" on a replacement might suggest that steps have been taken to procure one. Again, Thomas will have an opportunity to amend his claim.

## II.   Failure to Protect

Thomas' suggestion that unidentified prison employees' failure to provide unidentified inmates with mental health related medications "directly jepodize [sic] [Thomas'] safety," doc. 1-1 at 3, implicates a failure to protect claim. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. Merely negligent failure to protect an inmate from attack does not justify liability under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). "Prison officials must have been deliberately

indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  Moreover, the threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Id.* (internal quotation marks and citation omitted).  The general dangerousness of other inmates is not sufficient to support a failure-to-protect claim.  *See, e.g., Goodson v. Benton*, 2020 WL 975089, at *2 (S.D. Ga. Jan. 16, 2020) (citations omitted) ("Prisons are dangerous places because they are filled with people society has already deemed too dangerous to live amongst law abiding persons.  Prisoners will always be at some risk of harm simply by being surrounded by these people. [Cit.]  In order to trigger a failure-to-protect claim, a plaintiff must allege that the threat rose above the background danger."). Since Thomas' allegation does no more than allege the general dangerousness of other inmates, it is insufficient to support

a failure-to-protect claim. Moreover, as above, there is no allegation even suggesting any defendant's subjective deliberate indifference.

### III. ADA Claim

Thomas' invocation of "ADA issues" implicates a claim under the Americans with Disabilities Act. As discussed above, jails and prisons are not legal entities subject to suit. *See, e.g., Harmon v. Williams*, 2021 WL 93226, at *3 (S.D. Ga. Jan. 6, 2021) ("[L]ocal police departments and penal institutions are generally not considered legal entities subject to suit," and collecting cases). However, this Court has expressly recognized that the Georgia Department of Corrections and Coastal State Prison are subject to suit under the ADA's application to "public entities." *See Edmond v. Benton*, 2022 WL 152656, at *1 (S.D. Ga. Jan. 18, 2022) (citing, *inter alia.*, 42 U.S.C. § 12131(1); *United States v. Georgia*, 546 U.S. 151, 154 (2006)). Despite authorizing suits against public entities, the ADA does not authorize suits against individuals. *See Davis v. Georgia Dept. of Corrs.*, 2011 WL 1882441, at *5 (S.D. Ga. Apr. 21, 2011) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1172 (11th Cir. 2003)); *see also Owens v. Sec'y, Fla. Dept. of Corrs.*, 602 F. App'x 475, 478

(11th Cir. 2015). Thus, to the extent that Thomas asserts an ADA claim against the individual defendant, Paneiro, the claim fails.

"To state a claim under Title II, [a plaintiff must] allege (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability." *Ingram v. Kubik*, 30 F.4th 1241, 1256-57 (11th Cir. 2022) (quoting *Silberman v. Mami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)) (internal quotation marks and alterations omitted). "To get damages . . . a plaintiff must clear an additional hurdle: he must prove that the entity he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman*, 927 F.3d at 1134 (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)).

Thomas' allegation that he is housed in a dorm without a working water fountain fails to allege, at least, that he has been denied access because of his disability. Moreover, since he seeks damages, he must allege intentional discrimination. The absence of any allegation of any

9

particular individual's deliberate indifference is, as above, fatal to any Title II claim.

In summary, Thomas' Complaint fails to state any claim upon which relief may be granted. Despite his Complaint's failure to state a viable claim, "when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). Accordingly, Thomas is **DIRECTED** to submit an Amended Complaint no later than April 7, 2023. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). Thomas is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Thomas is further advised that failure to timely submit his amended

complaint may result in dismissal for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

Finally, the Court must assess Thomas' filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects no monthly deposits or balance. Doc. 13 at 1. Based upon his furnished information, he does not owe an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the

custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED,** this 9th day of March, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA